UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHEILA L. BLAIS,
        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
        Defendant.
                           /

Case No. 1:15-cv-0450

HON. PAUL L. MALONEY

**OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Sheila Blais seeks review of the Commissioner's decision denying her claim for disability insurance benefits under Title II of the Social Security Act.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial

evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 59 years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.40, 267.) She successfully completed high school, attended some college classes, and was previously employed as a secretary and as an analyst. (PageID.65–67.) Plaintiff applied for benefits on April 13, 2010, alleging that she had been disabled since August 18, 2009, due to lumbar disc disease, herniated discs, and fibromyalgia. (PageID.267–68, 307.) Plaintiff's application was denied on August 16, 2010, after which time she requested a hearing before an ALJ. (PageID.157–69.) On January 27, 2012, Plaintiff appeared before ALJ James Prothro for an administrative hearing. (PageID. 92–131.) After

the hearing, ALJ Prothro rendered his written decision that Plaintiff was not disabled. (PageID.135–47.) Plaintiff appealed ALJ Prothro's decision to the Social Security Appeals Council, which subsequently remanded the case on July 13, 2013, for further factual findings. (PageID.148–50.) ALJ Prothro held a second administrative hearing on November 6, 2013, with testimony being offered by Plaintiff and both a medical and a vocational expert (VE). (PageID.59–95.) In a written decision dated December 6, 2013, the ALJ determined that Plaintiff was not disabled. (PageID.40–58.) On February 28, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.24–29.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

3

point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Prothro determined Plaintiff's claim failed at the fourth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity (SGA) since August 18, 2009, the alleged onset date. (PageID.46.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) fibromyalgia; (2) degenerative disc disease of the lumbosacral spine; (3) hyperlipidemia; (4) hypertension; (5) benign paroxysmal vertigo (positional); and (6) obesity. (PageID.47.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.47–48.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform sedentary work as defined in 20 CFR 404.1567(a). More specifically, she is able to lift and carry up to 10 pounds occasionally and less than 10 pounds frequently, stand or walk for a total of two hours in an eight-hour workday, and sit for a total of six hours in an eight-hour workday.

(PageID.48.) Continuing with the fourth step, the ALJ determined that Plaintiff was able to perform he

4

duties of her past relevant work as a secretary and analyst as they were generally performed. (PageID.51–52.) Having made his determination at step 4, the ALJ ended his analysis and entered a finding that Plaintiff was not disabled at any point from the alleged onset date through December 6, 2013, the date of the decision. (PageID.52.)

## DISCUSSION

Plaintiff presents the following claims of error:

1. The ALJ committed reversible error by not properly considering the opinion of Plaintiff's treating physician (and specialist) and by failing to properly consider her severe impairment of fibromyalgia;

2. The ALJ committed reversible error by failing to consider that Plaintiff had significant accommodations at work; and

3. The ALJ committed reversible error by failing to follow the accurate testimony of the vocational expert.

(PageID.779.) The Court will discuss the issues below.

### 1.

On January 16, 2012, Traci Kramer, a certified physician's assistant, filled out a medical source statement regarding Plaintiff's physical RFC. (PageID.696–99.) Ms. Kramer determined Plaintiff was limited to an extent far greater than that recognized by the ALJ. Among other things, Ms. Kramer opined that Plaintiff could only walk half a block without experiencing severe pain. She could only sit for fifteen minutes and stand for five minutes at any one time. In total, Plaintiff could stand and walk for less than 2 hours, and sit for about four hours. (PageID.697.) Plaintiff would need an at will sit/stand option, and would need to take unscheduled breaks. (PageID.697.) Plaintiff would further be required to elevate her legs to waist level 60-70% of the day. (PageID.698.) Plaintiff could rarely lift ten pounds, twist, stoop, crouch,

and climb stairs. (PageID.698.) Finally, Plaintiff could be expected to be "off-task" for twenty-five percent or more of a workday, and was incapable of performing even "low stress" work. (PageID.698.) Plaintiff's treating physician, Dr. Niti Thakur, M.D. cosigned the statement. (PageID.699.) Plaintiff claims the ALJ erred by failing to give controlling weight to this opinion.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

As a physician's assistant, Ms. Kramer's opinion is not subject to the treating physician rule. A physician's assistant, certified or otherwise, is not an "acceptable medical source." See 20 C.F.R. § 404.1513(d); *see also Turner v. Astrue*, 390 F. App'x 581, 586 (7th Cir. 2010). However a "team" opinion that is signed both by a physician's assistant and a physician may qualify as a treating physician's opinion "when there is evidence demonstrating that the statement presented to the ALJ represented the opinions of a team effort, or that the medical facility used a team approach to a claimant's . . . treatment." *Borden v. Comm'r of Soc. Sec.*, No. 1:13CV2211, 2014 WL 7335176, at *9 n.2 (N.D. Ohio Dec. 19, 2014) (citing *Ceballos v. Astrue*, 2009 WL 2475472, *7–9 (D. Kan. Aug. 12, 2009)). The Court finds such evidence here, and accordingly the opinion is subject to the treating physician rule.

The deference accorded to such opinions is appropriate, however, only where the particular

6

opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

Furthermore, if the ALJ gives less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. Id. (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record

7

must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007).

The record from the outset of Plaintiff's alleged disability shows that in August 2009, Plaintiff was placed on work limitations by Dr. Carla Guggemheim. Plaintiff was limited to working two to three days a week for only four to six hours a day. (PageID.447.) These restrictions ran through November 2010, and aside from times in which Plaintiff did not work at all, Plaintiff appears to have kept to these hours through the end of her employment. (PageID.447.) Also in August 2009, she began physical therapy for her back pain. Plaintiff reported to her therapists that she was especially sore in the mornings, and was extremely limited in being able to stand and walk, as well as perform household chores. (PageID.449–50.) A month later, Plaintiff's condition appeared to improve. Plaintiff was able to alleviate her pain with stretching, and reported great improvement in her back pain. (PageID.452.) An MRI conducted in September 2009, revealed a diffuse central disc bulge at the L3-L4 level without evidence of herniation, spinal stenois and foraminal narrowing. Other results were consistent with degenerative disc disease. (PageID.500.) Physical therapists noted continued improvement in October and November of 2009. (PageID.455–59.) In December 2009, Plaintiff reported her symptoms had worsened as she was unable to attend therapy due to illness, however her therapist noted that Plaintiff had been able to increase her work hours and manage her symptoms. (PageID.462.) Plaintiff's therapy was thereafter terminated. (PageID.463.) Plaintiff met with Dr. Guggemheim in January 2010. Despite her progress at therapy, Plaintiff stated that she could not work, and believed her doctors were missing something. Dr. Guggemheim found that Plaintiff was depressed and advised a therapist. She also advised Plaintiff seek treatment from the Mayo Clinic's

8

fibromyalgia program. (PageID.469.) Plaintiff obtained additional physical therapy from Ionia County Memorial Hospital from March 2010 through May 2010 on the prescription of Dr. Niti Thakur. (PageID.562.) During that time Plaintiff reported a 40-45% improvement. Her pain level at rest was 1/10, however it was a 9/10 during activity. (PageID.559.) Plaintiff was discharged after a plateau in progress. (PageID.559.) While she was attending this therapy, Plaintiff was also treated by Dr. Thakur, a specialist in rheumatology. In February 2010 Dr. Thakur found that Plaintiff could walk for fifteen to twenty minutes at one time, but was limited due to fatigue and muscle pain. (PageID.607.) She noted Plaintiff had 16/18 fibromyalgia tender points (PageID.609.) X-rays revealed mild degenerative joint disease. (PageID.610.) Dr. Thakur suggested conservative treatment for Plaintiff's osteoarthritis and prescribed some narcotics. Weight loss and exercise was also advised. (PageID.609.) On April 16, 2010, Dr. Thakur found that Plaintiff had multiple tender points and had worsening fatigue. She was treated with medication. (PageID.600.) In July of 2010, Dr. Thakur took Plaintiff off work for two to four months to treat her fibromyalgia, osteoarthritis, back pain, and chronic fatigue. (PageID.599.)

In August 2011, Plaintiff's chief complaints were back pain and fatigue. (PageID.693.) Plaintiff was treated with medication and advice to exercise.(PageID.695.) Dr. Thakur found that Plaintiff was able to prepare meals, hang up clothes, snap and button, dress herself, climb stairs, go shopping, drive, bathe, and groom. (PageID.693.) Plaintiff again sought treatment from Dr. Thakur in November 2011, for joint pain. (PageID.676.) Dr. Thakur told her to continue with Cymbalta, which had been helpful, and increase exercise. Plaintiff was told to follow up in a few months. (PageID.678.) Plaintiff was seen in the ER on January 8, 2012, for vertigo. A CT test and an EKG test were performed, and Plaintiff was discharged and told to follow up with her doctor. (PageID.685.)

Plaintiff continued to treat with Dr. Thakur and Lansing Rheumatology. On March 9, 2012, (after the ALJ's first decision) Plaintiff sought treatment for lower back pain. (PageID.723.) Plaintiff reported exercising on a stationary bike for five minutes, once or twice a day, but that her back pain rated a 9.5 on a scale of 0-10. (PageID.723.) On exam, Plaintiff had full range of motion in her wrists, elbows, shoulders, and ankles. (PageID.725.) She had decreased range of motion in her lumbar spine. (PageID.723.) Plaintiff was given an injection and her medications were changed. She was told to follow up with Dr. Thakur in three months. It appears Plaintiff's next visit occurred on September 24, 2012. Plaintiff reported her "fibro[myalgia] hasn't been too bad," but reported shocks from her lower back down through her legs. (PageID.719.) Plaintiff reported she exercised a couple times a week in a pool and bike. (PageID.719.) Plaintiff was tender on her thoracic and lumbar spine, as well as at several joints but had normal strength and tone. (PageID.720.) Plaintiff's back pain was treated with medication. She was also told to treat her sacroiliac pain with stretching. Plaintiff's fibromyalgia was described as "stable and well managed with Cymbalta . . . and current pain medications." (PageID.721.) Plaintiff was again seen on April 4, 2013. Plaintiff had multiple tender points, and was described as not sleeping well. Her medications were again adjusted. (PageID.712.) On July 29, 2013, Plaintiff was seen for a "routine" appointment. She said her medication was working, but her muscle pain was worse due to weather changes. (PageID.706.) Plaintiff was described as "doing pretty well with her current medication and pool exercise, including stretching and walking in the pool." She was also advised to use a back brace when she had increased pain. (PageID.707.) In October 2013, Plaintiff stated she was doing "better." Her pain level was at a 6. (PageID.753.) Plaintiff's fibromyalgia was described as stable. (PageID.755.)

Against this backdrop, the ALJ gave Dr. Thakur's opinion "little weight." The ALJ noted he was

adopting the reasoning from his earlier decision, but also considered the opinion in light of evidence that had developed after his prior decision. The ALJ concluded that the objective medical records "gave no indication that the claimant was so severely limited, especially with respect to her need to elevate her legs." (PageID.50.) The ALJ noted treatment notes that showed Plaintiff was doing "pretty well" with stretching and exercise. After a review of the record, including the treatment notes summarized above, the Court concludes the ALJ gave good reasons, supported by substantial evidence, for giving less than controlling weight to Dr. Thakur's opinion. Moreover, the ALJ did not err in then determining that the opinion was due only little weight. The record shows the ALJ considered the factors in 20 C.F.R. § 404.1527, including the specialization of Dr. Thakur as Plaintiff's rheumatologist, but determined such opinion was inconsistent with the evidence of record. (PageID.49–50.) The Court finds no error.

Plaintiff appears to argue that the ALJ may have dismissed Dr. Thakur's opinion because the ALJ incorrectly applied SSR 12–2p. (PageID.780–81.) The portion of the regulation that Plaintiff discusses concerns how to determine whether a claimant suffers from fibromyalgia. As discussed, the ALJ found that Plaintiff did suffer from the "severe" impairment of fibromyalgia, and then proceeded to consider the effects of that impairment on Plaintiff's ability to perform work. Contrary to Plaintiff's suggestion, "a diagnosis of fibromyalgia does not equate to a finding of disability or an entitlement to benefits." *Stankowski v. Astrue*, 532 F. App'x 614, 619 (6th Cir. 2013); *see also McKenzie v. Comm'r of Soc. Sec.*, No. 99–3400, 2000 WL 687680, at *5 (6th Cir. May 19, 2000) ("[T]he mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual."). The ALJ determined that Plaintiff suffered from fibromyalgia, and then analyzed the medical evidence to determine Plaintiff's RFC. Accordingly, Plaintiff has not demonstrated that the ALJ's analysis

of SSR 12–2p resulted in any error.

Plaintiff also argues that the ALJ erred in giving more weight to the opinion of Dr. Rubin, who did not examine Plaintiff, than to Dr. Thakur. The Court finds no error. "In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6P, 1996 WL 374180, at *3 (July 2, 1996). When an ALJ has provided "good reasons" for discounting a treating physician's opinion, as is the case here, the ALJ is not required to afford less weight to a medical consultant's opinions as long as they are supported by the evidence of record. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2011). At the administrative hearing, Dr. Rubin testified that Plaintiff would be capable of performing light work, so long as her fibromyalgia was not exacerbated. (PageID.81.) As noted above, the record shows that Plaintiff's fibromyalgia was controlled with medication, as well as with exercising and stretching. Plaintiff herself testified at the hearing that her condition had improved. (PageID.70.) Accordingly, the ALJ did not err in giving weight to Dr. Rubin's opinion.

**2.**

At the first administrative hearing, Plaintiff testified that she worked for the state of Michigan in the same division for the past fifteen years. (PageID.105.) By the end of her employment, however, Plaintiff testified that her employer provided her with several accommodations in consideration of her impairments. Plaintiff testified that in a workday that was only between four and six hours, she would lie down on a cot once to twice a day, for a period of fifteen to twenty minutes each time. (PageID.72–73.) Plaintiff testified, however, that the cot was available for anyone who needed it. Plaintiff also noted that she was allowed to

arrive to work late, and that her employer "adjusted [her] job. They distributed some of [her] work elsewhere." She was allowed to use the handicapped parking spot. (PageID.72–73.) Plaintiff argues the ALJ failed to consider these accommodations in determining she could perform her past relevant work.

It is the claimant's burden at the fourth step of the sequential evaluation to show an inability to return to any past relevant work. *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980). To support a finding that a claimant can perform his or her past relevant work, the Commissioner's decision must explain why the claimant can perform the demands and duties of the past job as actually performed or as ordinarily required by employers throughout the national economy. *D'Angelo v. Comm'r of Soc. Sec.*, 475 F. Supp. 2d 716, 723–24 (W.D. Mich. 2007), citing *Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir.1987). See SSR 82-61, 1982 WL 31387 at *2 (1982) (the determination at step four can be supported by the finding that the claimant can perform her past relevant work as "actually performed," or, "as generally required by employers throughout the national economy"). A claimant must show that the impairments are so severe that he/she is "unable to do his previous work." *Studaway*, 815 F.2d at 1076, quoting 42 U.S.C. § 423(d)(2)(A).

Plaintiff contends that the ALJ failed to consider that her past relevant work as a secretary and analyst was in a sheltered environment and that an employer in a competitive work setting would not make these accommodations. Accommodated work is a factor to consider in determining whether one can do past relevant work. *See* 20 C.F.R. § 404.1573(c) ("[i]f your work is done under special conditions, we may find that it does not show that you have the ability to do substantial gainful activity").

> Work done under special conditions is addressed in 20 C.F.R. § 404.1573(c), which provides that even work done in a sheltered workshop may show a claimant possesses "the necessary skills and ability to work at the substantial gainful activity level." If, however,

> a claimant's impairments prevent him from doing "ordinary or simple tasks satisfactorily without more supervision or assistance than is usually given other people doing similar work," it may be sufficient to show that the claimant is not working at the substantial gainful activity level. 20 C.F.R. § 404.1573(b).

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). The Social Security Administration has defined earnings levels that constitute SGA for each calendar year. *See* 20 C.F.R. § 404.1574(a), (b). Evidence that a claimant earned in excess of these levels creates a rebuttable presumption that she engaged in SGA. *See Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 246 (6th Cir.1996). In 2009, the year in which Plaintiff alleges her disability began, the Commissioner set the level of SGA at $980 a month. *Substantial Gainful Activity*, SOCIAL SECURITY ADMIN., https://www.ssa.gov/oact/cola/sga.html (last visited Apr. 1, 2016). The record shows Plaintiff earned $38,680 in 2009, and roughly $10,000 and $4,000 in the third and fourth quarters, respectively. Plaintiff does not allege that her earnings fell beneath the level for SGA set by the Commissioner. Plaintiff's claim fails for at least two reasons. First, because Plaintiff failed to raise the matter to the ALJ at the administrative hearing, she has waived the issue. *See, e.g., Spuhler v. Colvin*, 2014 WL 4855743 at *22 (E.D. Mich., June 17, 2014). Plaintiff's attorney was asked both at the beginning and the end of the hearing whether there was anything to discuss, and at both opportunities counsel failed to explicitly address the accommodation issue. (PageID.64, 94.) Second, it was Plaintiff's burden to present evidence sufficient to rebut the presumption that the wages that she earned constituted SGA. Plaintiff has not satisfied that burden. For example, Plaintiff testified she would lie down on a cot while at work, but Plaintiff admits that the cot was available for her coworkers as well, and the cot does not appear to be a specific accommodation made for her. (PageID.72.) Moreover, Plaintiff did not produce an employer's report

14

documenting her work responsibilities. She offered no evidence, other than her testimony, which would allow the ALJ to find that she was not truly earning the amounts she was being paid. In similar situations, such has been insufficient to rebut the presumption of SGA. *See, e.g., Dinkel v. Sec'y of Health & Human Servs.*, 910 F.2d 315, 319 (6th Cir.1990) (citing *Anderson v. Heckler*, 726 F.2d 455, 458 (8th Cir. 1984) (presumption not rebutted by Plaintiff's testimony, when such was not substantiated by testimony of her employers). A general assertion that Plaintiff's work was "accommodated" does not suffice. *See Fisher v. Barnhart*, 129 F. App'x 297, 302 (7th Cir. 2005). Unfortunately for Plaintiff, that is all there is here. Accordingly, Plaintiff fails to rebut the presumption that her wages earned were SGA, and Plaintiff's claim fails.

**3.**

Finally, in Plaintiff's third claim of error, Plaintiff contends that the ALJ erred by failing to follow the VE's testimony at the administrative hearing regarding Dr. Thakur's opinion. In response to that hypothetical, the VE responded that Plaintiff was not capable of performing her past work, nor any other work in the economy. (PageID.92–93.) In his hypothetical questions to a VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record. *See Casey v. Sec'y of Health & Human Servs.*, 14 987 F.2d 1230, 1235 (6th Cir. 1993). As discussed above, the ALJ gave Dr. Thakur's opinion little weight because it was inconsistent with other substantial evidence, including Dr. Thakur's own treatment notes. And, as the Court has already concluded, the ALJ gave good reasons for his treatment of Dr. Thakur's opinion. Thus, the ALJ did not err by failing to include those limitations that he found were not credible and supported by the record. Accordingly, Plaintiff's third claim of error is rejected.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED.** A separate judgment shall issue.


Dated:  April 13, 2016                              /s/ Paul L. Maloney
                                                    PAUL L. MALONEY
                                                    United States District Judge